# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| DARRELL D WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00703-RK |
| | ) | Case No. 4:02-cr-00161-RK |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Darrell Walker's ("Walker") successive motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is before this Court following remand. (Doc. 1; Crim. Doc. 202.)[1] Because Walker has not met his burden, the Motion is **DENIED**, but Walker is **GRANTED** a certificate of appealability.

## Background

In December 2004, Walker was convicted by a jury on two counts of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, all in violation of 18 U.S.C. § 922(g). In August 2005, the sentencing court found Walker qualified as an armed career criminal under the ACCA and rendered an enhanced sentence of 293 months' imprisonment on each count, concurrently, to be followed by a five-year term of supervised release. The Presentence Investigation Report ("PSR") showed Walker had four prior convictions that potentially qualified him for the sentencing enhancement: two convictions for Missouri second-degree burglary of an inhabitable structure, a conviction for Missouri first-degree burglary, and a conviction for the sale of a controlled substance. (Doc. 162 at ¶¶ 58, 59, 61, and 62.) Walker argues that he no longer qualifies for the sentencing enhancement because the ACCA requires three predicate convictions and, based on *Johnson*, his two prior convictions for Missouri second-degree burglary of an inhabitable structure no longer count.

The successive motion is back before the Court following remand from the Eighth Circuit with directions to "determine in the first instance whether Walker has shown by a preponderance

---

[1] "Doc." refers to the docket number entries in Walker's civil case. "Crim Doc." refers to the docket number entries in Walker's criminal case.

of the evidence that his successive § 2255 claim relies on *Johnson*'s new rule invalidating the [ACCA's] residual clause. The district court should proceed to the merits only if Walker is able to carry his burden." *Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018). Determining whether Walker has carried is burden is a two-step process. The Court held a hearing on May 20, 2019, and the parties have filed post-hearing briefs. (Docs. 41, 42.)

### Synopsis

**I. Step One:** The sentencing record is inconclusive as to which clause, or clauses, the sentencing court used for the sentencing enhancement.

**II. Step Two:** The legal background in August 2005 shows it is just as likely that the sentencing court used the enumerated offenses clause under as an alternative basis to the residual clause for the sentencing enhancement.

    **A. Enumerated Offenses Clause:** The legal background in August of 2005 allowed the sentencing court to utilize the enumerated offenses clause under *Taylor* (1990) for the sentencing enhancement. Based on the following five legal principles set forth in *Taylor*, the Court finds that the language in the Missouri second-degree statute's definition of inhabitable structure modifying the class of vehicles and structures to places in which people are located or are customarily located falls within the scope of generic burglary's definition.

        1. Congress singled out burglary because of its inherent potential harm to persons.

        2. ACCA burglary includes places other than dwellings, but it does not include all automobiles.

        3. ACCA burglary is not limited to a special subclass of especially dangerous burglaries.

        4. ACCA burglary is generic in the sense in which criminal codes of most States defined burglary in 1986.

        5. ACCA burglary approximates the Model Penal Code's contemporaneous definition of burglary.

    **B. Residual Clause:** The legal background in August of 2005 allowed the sentencing court to utilize the residual clause under *Hascall* (1996) and its progeny as a basis for sentencing enhancement involving Missouri second-degree burglary convictions.

    **C. Alternate Basis:** Because the legal background shows it is just as likely that the sentencing court used the enumerated offenses clause as an alternative to the residual clause, Walker has not met his burden to show that his claim relies on *Johnson*.

### D. Cases which are Distinguishable

1. The Eastern District of Missouri's decision in *Caldwell* does not consider whether the enumerated offenses clause was available to the sentencing court as an alternative basis.

2. The Western District of Missouri's decision in *Evans* found the sentencing record in Step One to conclusively rely on the residual clause, and therefore did not proceed to Step Two.

3. The Western District of Missouri's decision in *Smith* granted relief based on the Government's misplaced concession and reliance on *Mathis*.

### <u>Discussion</u>

Section 922(g) offenses generally carry a maximum punishment of 10 years in prison. 18 U.S.C. §§ 922(g), 924(a)(2). The ACCA, however, imposes a mandatory 15-year minimum prison term for an offender who has three prior convictions "for a violent felony or a serious drug offense[.]" § 924(e)(1). A prior felony conviction qualifies as a "violent felony" if it:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

§ 924(e)(2)(B) (emphasis added). Subsection (i) of this provision is known as the "force" clause; the phrase "burglary, arson, or extortion, involves use of explosives" is known as the "enumerated offenses" clause; and the closing phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is known as the "residual" clause. *Johnson v. United States*, 135 S. Ct. 2551, 2555-58 (2015). The Supreme Court in *Johnson* struck down the residual clause as unconstitutionally vague. *Id.* at 2557, 2563 (2015). *Johnson* announced a "substantive rule" that is retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Walker must show that his Section 2255 claim "relies on" *Johnson's* new rule invaliding the ACCA's residual clause. *Walker*, 900 F.3d at 1014. Specifically, Walker must "show by a preponderance of the evidence that the residual clause led the sentencing court to apply the ACCA [sentencing] enhancement." *Id.* at 1015. This analysis has two steps. The Court first determines whether the sentencing record indicates which clause the sentencing court used to count Walker's Missouri second-degree burglary convictions as violent felonies. *See Golinveaux v. United States*,

915 F.3d 564, 568 (8th Cir. 2019). If the sentencing record is inconclusive, the Court then determines what the relevant legal background was at the time of sentencing. *Id.* Under this legal environment test, "[i]n some cases, the legal background at the time of sentencing will establish that the [enhanced sentence] was necessarily based on the residual clause." *Walker*, 900 F.3d at 1015. "By contrast, '[i]f it is just as likely that the sentencing court relied on the . . . enumerated offenses clause, solely or as an alternative basis for the [enhanced sentence], then the movant has failed to show that his [enhanced sentence] was due to use of the residual clause.'" *Walker*, 900 F.3d at 1015 (citation omitted).

## I. Step One: The sentencing record is inconclusive as to which clause the sentencing court used for the sentencing enhancement.

The Court finds the sentencing record is inconclusive. It is important to note that Walker was sentenced by a different judge, and this case has since been reassigned to the undersigned. The Court has reviewed the complete record, including, but not limited to, the following documents in this case: transcripts of the jury trial (Crim. Docs. 158, 159), transcript of the sentencing hearing (Crim. Doc. 161), sentencing memorandum (Crim. Doc. 152), Presentence Investigation Report ("PSR") (Crim. Doc. 162), and Walker's initial § 2255 motion (Crim. Doc. 171). The Court does not find a historical fact that indicates which clause was the basis of the sentencing enhancement. In particular, neither the sentencing court nor the PSR specified which clause of the ACCA supported the sentencing enhancement. At oral argument, Walker's counsel conceded that the sentencing court did not specify which clause of the ACCA supported the sentencing enhancement, and counsel for the Government did not speak to this issue.[2] (*E.g.*, Doc. 43 at 10, 14.) The Court concludes that the sentencing record is inconclusive as to which clause the sentencing court relied on in finding Walker's convictions for Missouri second-degree burglary of an inhabitable structure are predicate offenses under the ACCA.

---

[2] At the hearing, Walker's counsel focused on the objection lodged by Walker's counsel at sentencing based on *Shepard v. United States*, 544 U.S. 13 (2005), regarding the sentencing court's ability to look beyond pleadings and other court documents in determining whether Walker's prior convictions were predicate offenses under the ACCA. (Doc. 152 at 3.) Walker contends that this objection informed the sentencing court that it could not consider information in the PSR indicating that Walker's prior burglary convictions involved a dwelling or residence. The Court agrees that it cannot consider the information in the PSR describing Walker's prior burglary convictions as involving a dwelling or residence. However, this still leaves the question of which clause the sentencing court relied on in classifying Walker's Missouri second-degree convictions of an inhabitable structure as violent felonies.

**II. Step Two: The legal background in August 2005 shows it is just as likely that the sentencing court used the enumerated offenses clause as an alternative basis to the residual clause for the sentencing enhancement.**

    **A. Enumerated Offenses Clause: The legal background in August of 2005 allowed the sentencing court to utilize the enumerated offenses clause under *Taylor* (1990) for the sentencing enhancement. Based on the following five legal principles set forth in *Taylor*, the Court finds that the language in the Missouri second-degree statute's definition of inhabitable structure modifying the class of vehicles and structures to places in which people are located or are customarily located falls within the scope of generic burglary's definition.**

    "[T]he relevant background legal environment is . . . a 'snapshot' of what the controlling law was at the time of sentencing[.]" *Walker*, 900 F.3d at 1015 (citing *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017)). At the time of sentencing in August 2005, the Supreme Court had construed "burglary" in the enumerated offenses clause to mean "generic burglary."[3] *Taylor v. United States*, 495 U.S. 575, 577, 598 (1990). The *Taylor* Court defined generic burglary for the purposes of the enumerated offenses clause as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 598. The *Taylor* Court had also held that in deciding whether a prior conviction counts as generic burglary, a sentencing court should generally apply the categorical approach, looking only to the fact of conviction and the statutory definition of the prior offense. *Id.* at 600. However, when the statute of conviction is broader than generic burglary, a sentencing court should apply the modified categorical approach, looking to a limited set of documents to determine the elements underlying the defendant's conviction. *Id.* at 602 (recognizing an exception to the categorical approach); *see Descamps v. United States*, 570 U.S. 254, 261 (2013) (*Taylor's* exception to the categorical approach later dubbed the modified categorical approach). A prior offense counts as ACCA burglary under the enumerated offenses clause if either under the categorical approach, its statutory definition substantially corresponds to, or is narrower than, the elements of generic burglary, or, under the modified categorical approach, the limited set of documents show the conviction actually involved findings of the elements of generic burglary. *Id.*; *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016).

---

[3] For purposes of this Order, the Court uses the term "generic burglary" interchangeably with "ACCA burglary."

Here, the Missouri second-degree burglary statute defines burglary as "when [a person] knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Mo. Rev. Stat. § 569.170.1.[4] The statute defines "inhabitable structure" to include:

> a ship, trailer, sleeping car, airplane, or other vehicle or structure:
>
> (a) [w]here any person lives or carries on business or other calling; or
>
> (b) [w]here people assemble for purposes of business, government, education, religion, entertainment or public transportation; or
>
> (c) [w]hich is used for overnight accommodation of persons. Any such vehicle or structure is 'inhabitable' regardless of whether a person is actually present[.]

*Id.* § 569.010(2). The chart below shows a side-by-side comparison of the elements of Missouri second-degree burglary and the elements of generic burglary:

| Elements of Missouri second-degree burglary | Elements of generic burglary |
| --- | --- |
| A person knowingly enters unlawfully or knowingly remains unlawfully in | an unlawful or unprivileged entry into, or remaining in |
| a building or inhabitable structure | a building or other structure |
| for the purpose of committing a crime therein | with intent to commit a crime |

The elements of the Missouri second-degree burglary as written in the language of the statute seem to "substantially correspond" or match the elements of generic burglary. The question is whether the statutory term "inhabitable structure" takes the Missouri second-degree statute outside the scope of generic burglary. In other words, does the statutory definition of "inhabitable structure" cover a broader range of places than "a building or structure" in generic burglary. *See Taylor*, 495 U.S. at 601. Based on the following five legal principles set forth in *Taylor*, the Court finds that the language in the Missouri second-degree statute's definition of inhabitable structure modifying the class of vehicles and structures to places in which people are located or are customarily located

---

[4] Unless noted otherwise, all references to the Missouri second-degree burglary statute for purposes of this Order are to the 1979 version.

falls within the scope of generic burglary's definition as set forth in *Taylor*.[5] *See* Endnote 1 (discussing *Mathis v. United States*, 136 S. Ct. 2243 (2016) and its impact on ACCA jurisprudence).

**1. Congress singled out burglary because of its inherent potential harm to persons.**

As the Supreme Court recognized in *Taylor*, "[t]he legislative history [of the ACCA] indicates that Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons." *Taylor*, 495 U.S. at 588; *see also Quarles v. United States*, No. 17-778, 2019 U.S. LEXIS 4027, at *12 (June 10, 2019); *United States v. Stitt*, 139 S. Ct. 399, 406 (2018); *Faulkner v. United States*, No. 18-1984, 2019 U.S. App. LEXIS 17132, at *7 (8th Cir. June 7, 2019). The *Taylor* Court explained that burglary "creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Id.*; *see also Quarles*, 2019 U.S. LEXIS 4027, at *13; *Stitt*, 139 S. Ct. at 406; *Faulkner*, 2019 U.S. App. LEXIS 17132, at *7. A burglar's "own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape." *Id.*

Burglary of an inhabitable structure as defined in the Missouri second-degree statute presents a similar or greater risk of violent confrontation of a building or house. The Missouri statute's inclusion of a broad class of vehicles and structures—"a ship, trailer, sleeping car, airplane, or other vehicle or structure"—does not stand alone, but rather, the statute has additional modifying language that restricts the statute's coverage to where people live, do business, assemble, or stay overnight. Mo. Rev. Stat. § 569.010(2)(a)-(c). This modifying language in the statute's definition of inhabitable structure focuses on places in which people are located or are customarily located. A burglar entering places in which people are located or are customarily located is likely on notice that people are either inside, or that someone will likely be alerted to come investigate. For example, when a burglar breaks into a houseboat, camper, an RV, a vehicle or another structure where people live, do business, or assemble, or stay overnight, the burglar is likely to confront "an occupant, caretaker, or some other person who comes to investigate."

---

[5] Because the Court finds that Missouri second-degree burglary is not broader than generic burglary, the categorical approach applies. The modified categorical approach and the corresponding issue of whether the statute is divisible, i.e., contains alternative elements as opposed to alternative means, is inapplicable. *See Mathis*, 136 S. Ct. at 2249; *Descamps v. United States*, 570 U.S. 254, 261-62 (2013) (citing *Taylor*, 495 U.S. at 602).

*See Stitt*, 139 S. Ct. at 406; *United States v. Spring*, 80 F.3d 1450, 1462 (10th Cir. 1996). The burglary of such vehicles or structures is often likely to pose a greater risk of violence to the occupant, caretaker, or investigator than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed. *See Spring*, 80 F.3d at 1462.

To interpret generic burglary to exclude burglary of a structure or vehicle in which people are located or are customarily located would mean burglaries often posing a greater risk than burglary of a building or house would be eliminated as predicate offenses because they are broader than generic burglary. This result makes little sense considering that Congress' intent in singling out burglary was "because of its inherent potential for harm to persons." *Taylor*, 495 U.S. at 588.

## 2. ACCA burglary includes places other than dwellings, but it does not include all automobiles.

The Supreme Court in *Taylor* explained, after examining the ACCA's legislative history and purpose, that Congress intended a generic definition of burglary which includes places other than dwellings. *Taylor*, 495 U.S. at 580-92; *Stitt*, 139 S. Ct. at 405. The *Taylor* Court held that generic burglary includes "at least the 'classic' common-law definition" which is "a breaking and entering of a dwelling at night, with intent to commit a felony[.]" *Taylor*, 495 U.S. at 593. In doing so, the *Taylor* Court said the common-law definition, in part by excluding all places other than dwellings, did not align with the purposes of the ACCA and has "little relevance to modern law enforcement concerns." *Id.* Indeed, by the time the ACCA was passed in 1986, most States had expanded their definition of burglary to include "structures other than dwellings." *Id. Taylor* noted that some States define burglary more broadly than its generic definition, for example, statutes that include "places, such as automobiles and vending machines." *Id.* at 599. However, the Supreme Court did not limit generic burglary to structures only akin to buildings. *See Stitt*, 139 S. Ct. at 404; *Faulkner*, 2019 U.S. App. LEXIS 17132 at *6.

Missouri's definition of inhabitable structure includes vehicles and structures other than buildings, which at first glance makes it appear that the statute is broader than generic burglary. However, inhabitable structure as defined in the statute includes additional modifying language which makes it clear that the statute does not include any and all automobiles, vehicles or other structures. Only vehicles and structures where people live, do business, assemble, or stay overnight meet the definition of an inhabitable structure. The additional modifying language in

Missouri's definition of inhabitable structure means that the statute does not include vehicles and structures in the sense in which *Taylor* excludes them. *See Spring*, 80 F.3d at 1462.

### 3. ACCA burglary is not limited to a special subclass of especially dangerous burglaries.

The Supreme Court in *Taylor*, after reviewing the text and history of the ACCA, rejected the argument that Congress intended only to include an especially dangerous subclass of burglaries. *Taylor*, 495 U.S. at 597. Had this been Congress' intent, the Supreme Court reasoned, it is unlikely that it would have included the since-invalidated residual clause ("or otherwise involves conduct that presents a serious potential risk"). *Id.*; *Stitt*, 139 S. Ct. at 405; *Faulkner*, 2019 U.S. App. LEXIS 17132, at *7. Instead, "Congress presumably realized that the word 'burglary' is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries[.]" *Id.* The *Taylor* Court reasoned "[t]his choice of language indicates that Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' to count toward enhancement." *Id.* From its review of the legislative history, the Supreme Court explained:

> Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year constituted a category of crimes that shared this potential for violence and that were likely to be committed by career criminals. There never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night.

*Id.* at 588.

Again, Missouri's definition of inhabitable structure focuses on places in which people are located or are customarily located. Given the modifying language in the statute's definition of inhabitable structure, the burglary of vehicles and structures meeting this definition is often likely to pose a risk of violence to another person who may be present, or who may come to investigate. The burglary of such vehicles or structures is often likely to pose a greater risk of violence to the occupant, caretaker, or investigator than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed. *See Stitt*, 139 S. Ct. at 406; *Spring*, 80 F.3d at 1462. To interpret generic burglary to exclude burglary of a structure or vehicle in which people are located or are customarily located would mean burglaries often posing a greater risk than burglary of a building or house would be eliminated as predicate offenses because they are broader

than generic burglary. This result makes little sense considering that Congress intended to include "not only aggravated burglaries, but also run-of-the-mill burglaries." *Taylor*, 495 U.S. at 597.

### 4. ACCA burglary is generic in the sense in which criminal codes of most States defined burglary in 1986.

The Supreme Court made clear in *Taylor* that Congress intended the definition of generic burglary to reflect the term burglary as it was used in the criminal codes of most States at the time the ACCA was passed. *Taylor*, 495 U.S. at 598; *Stitt*, 139 S. Ct. at 406. For this reason, *Taylor* did not limit the definition of generic burglary to the narrow common-law definition which only covered dwellings. *Id.* at 593. Instead, *Taylor* defined generic burglary more broadly to include "a building or other structure" which was consistent with how burglary was used in the criminal codes of most States at the time of the ACCA's enactment. *Id.* at 598.

At the time the ACCA was enacted in 1986, a majority of state burglary statutes covered occupiable structures where people live, do business, assemble, or stay overnight. *Stitt*, 139 S. Ct. at 406 (in 1986, the majority of state burglary statutes covered vehicles adapted or customarily used for overnight lodging or a broader class of vehicles); *see, e.g.*, Alaska Stat. §§ 11.46.300, 11.46.310, 11.81.900(b)(3) (1989) (effective 1978) (involving a "building" which, "in addition to its usual meaning, includes any propelled vehicle or structure adapted for overnight accommodation of persons or for carrying on business."); Ark. Stat. Ann. §§ 41-2001(1), 41-2002 (1977) (involving an "occupiable structure" which is defined as a "vehicle, building, or other structure: (a) where any person lives or carries on a business or other calling; or (b) where people assemble for purposes of business, government, education, religion, entertainment, or public transportation; or (c) which is customarily used for overnight accommodation of persons; whether or not a person is actually present."); N. H. Rev. Stat. Ann. § 635:1 (1974) (involving an "occupied structure" which includes any "structure, vehicle, boat or place adapted for overnight accommodation of persons, or for carrying on business therein[.]"); Ky. Rev. Stat. Ann. § 511.010(1) (1980) (involving a "building" which "in addition to its ordinary meaning, means any structure, vehicle, watercraft or aircraft: (a) where any person lives; or (b) where people assemble for purposes of business, government, education, religion, entertainment or public transportation."); Wyo. Stat. Ann. §§ 6-3-401(a)(v), 6-3-301 (1977) (Cum. Supp. 1985) (involving an "occupied structure" defined to mean a structure or vehicle whether or not a person is actually present: "(A) Where any person lives or carries on business or other calling; (B) Where people

assemble for purposes of business, government, education, religion, entertainment or public transportation; (C) Which is used for overnight accommodation of persons; or (D) In which a person may reasonably be expected to be present."); and Appendix, *infra* (collecting burglary statutes covering occupiable structures where people live, do business, assemble, or stay overnight, or a broader class of occupiable places).

To interpret generic burglary to exclude burglary of structures and vehicles in which people live, do business, assemble, or stay overnight, would not only eliminate as predicate offenses burglaries which present a similar or greater risk of violent confrontation than burglaries of a building or house, but would also eliminate as predicate offenses many States' burglary statutes. *See Quarles*, 2019 U.S. LEXIS 4027, at *13-14.

### 5. ACCA burglary approximates the Model Penal Code's contemporaneous definition of burglary.

The Supreme Court in *Taylor* noted that generic burglary approximates the definition of burglary in the Model Penal Code at the time the ACCA was passed. *Taylor*, 495 U.S. at 598 n.8. The Model Penal Code's contemporaneous definition of burglary includes "a building or occupied structure, or separately secured or occupied portion thereof[.]" ALI, Model Penal Code § 221.1 (1980); *Faulkner*, 2019 U.S. App. LEXIS 17132, at *6. The Model Penal Code defined "occupied structure" for purposes of burglary as including "any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." ALI, Model Penal Code §§ 220.0(1), 221.1(1) (1980); *Stitt*, 139 S. Ct. at 406. In the Comments, the Model Penal Code provides that burglary should cover places with the "apparent potential for regular occupancy." ALI, Model Penal Code § 221.1, Comment 3(b), p.72; *Stitt*, 139 S. Ct. at 406.

Missouri second-degree burglary of an inhabitable structure approximates or substantially corresponds with the definition of burglary in the Model Penal Code at the time the ACCA was passed. Like the Model Penal Code's definition of "occupied structure," the Missouri statute's definition of inhabitable structure limits coverage of vehicles or structures to where people live, do business, assemble, or stay overnight. In addition, consistent with the Comments of the Model Penal Code, inhabitable structure as defined in the Missouri statute is restricted to structures and vehicles where people live, do business, assemble or stay overnight, which are all places with the "apparent potential for regular occupancy."

In summary, when comparing the elements, the Missouri second-degree burglary statute substantially corresponds with generic burglary, and the statutory definition of "inhabitable structure" in Missouri second-degree burglary does not cover a broader range of places than "a building or other structure" in generic burglary. The Missouri statute defines inhabitable structure to covers places other than dwellings, such as vehicles and structures, but the statute's additional modifying language restricts burglary's coverage to places in which people are located or are customarily located. The burglary of such vehicles or structures is often likely to pose a greater risk of violence to the occupant, caretaker, or investigator than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed. If generic burglary is interpreted to exclude burglary of a structure and vehicles which are customarily occupied or looked after, then many States' burglary statutes as well as the contemporaneous Model Penal Code definition of burglary would be broader than generic burglary and would be eliminated as predicate offenses. That result makes little sense given that the *Taylor* Court interpreted ACCA burglary in light of: "the ordinary understanding of burglary as of 1986; the States' laws at that time; Congress' recognition of the dangers of burglary; and Congress' stated objective of imposing increased punishment on armed career criminals who had committed prior burglaries." *See Quarles*, 2019 U.S. LEXIS 4027, at *13-14.

Because the statutory definition of inhabitable structure does not take the Missouri second-degree statute outside the scope of *Taylor's* generic burglary, the legal background in August of 2005 allowed the sentencing court to utilize the enumerated offenses clause as a basis for counting Walker's Missouri second-degree burglary convictions as violent felonies.

**B. Residual Clause: The legal background in August of 2005 allowed the sentencing court to utilize the residual clause under *Hascall* (1996) and its progeny as a basis for sentencing enhancement involving Missouri second-degree burglary convictions.**

The legal background in August of 2005 allowed the sentencing court to utilize the residual clause under *Hascall* and its progeny as a basis to classify Walker's convictions for Missouri second-degree burglary of an inhabitable structure as violent felonies under the ACCA. *See United States v. Nolan*, 397 F.3d 665, 666 (8th Cir. 2005) ("We have consistently held that burglary is a predicate offense under § 924(e) and the Sentencing Guidelines ("USSG.") § 4B1.2."); *United States v. Mohr*, 382 F.3d 857, 860-61 (8th Cir. 2004) (burglary of commercial building is categorically a crime of violence under residual clause of USSG.); *United States v. Blahowski*, 324 F.3d 592, 594-95 (8th Cir. 2003) (same); *United States v. Hascall*, 76 F.3d 902, 904 (8th Cir. 1996)

(same); *see also Blahowski*, 324 F.3d at 594-95 (identically worded clauses in the USSG and the residual clause of the ACCA given same meaning).

**C. Alternate Basis: Because the legal background shows it is just as likely that the sentencing court used the enumerated offenses clause as an alternative to the residual clause, Walker has not met his burden to show that his claim relies on *Johnson*.**

The legal background shows it is just as likely that the sentencing court used the enumerated offenses clause as an alternative basis to the residual clause in classifying Walker's convictions for Missouri second-degree burglary of inhabitable structure are violent felonies under the ACCA. The fact that the residual clause was available does not change the fact that under *Taylor*, the enumerated offenses clause was also available, at least as an alternative basis. "[I]t is not enough for Walker to show that the background legal environment at the time of [his] sentencing reveals the residual clause offered the path of least analytical resistance." *Walker*, 900 F.3d at 1015. (internal quotation marks omitted). Walker has not met his burden to "show by a preponderance of the evidence that the residual clause led the sentencing court to apply the ACCA enhancement" and, therefore, has not shown that his claim relies on *Johnson's* new rule. *Walker*, 900 F.3d at 1015.

**D. Cases which are Distinguishable**

**1. The Eastern District of Missouri's decision in *Caldwell* does not consider whether the enumerated offenses clause was available to the sentencing court as an alternative basis.**

Walker maintains that *Caldwell*, a case decided by a district court in the Eastern District of Missouri, demonstrates why he has met his burden in this case. 2019 WL 670316 (E.D. Mo. Feb. 19, 2019). In *Caldwell*, the district court considered identical convictions for Missouri second-degree burglary and found that "the relevant background legal environment at the time of sentencing establishes [the movant] was sentenced under the residual clause invalidated by *Johnson*." *Id.* at *12-13. *Caldwell*, however, did not consider whether the enumerated offenses clause was available to the sentencing court as an alternative basis.

**2. The Western District of Missouri's decision in *Evans* found the sentencing record in Step One to conclusively rely on the residual clause, and therefore did not proceed to Step Two.**

In Walker's post-hearing brief, he cites to two additional district court decisions and argues that "a trend in the law has emerged, with district courts granting successive § 2255 motions based

on this indistinguishable issue of Missouri burglary." (Doc. 42 at 1.) Although these decisions did address identical convictions for Missouri second-degree burglary of an inhabitable structure, the Court disagrees with counsel that the decisions are indistinguishable. *Evans*, unlike here, is not a silent record case. The district court in *Evans* found that the movant had met its burden based on indications in the sentencing record that the sentencing court had relied on the residual clause in finding the prior conviction for Missouri second-degree burglary of an inhabitable structure was a violent felony. No. 16-cv-03281-FJG (W.D. Mo. May 23, 2019) (Doc. 53 at 7) ("In this case, the Court agrees with Evans' counsel and finds that the sentencing record is not silent.").

### 3. The Western District of Missouri's decision in *Smith* granted relief based on the Government's misplaced concession and reliance on *Mathis*.

In *Smith*, a decision that predates *Walker*, 900 F.3d 1012, the Government conceded that it could not demonstrate that one of Smith's second-degree burglary convictions qualifies as a predicate offense. 16-cv-05064-DGK (W.D. Mo. Feb. 2, 2018) (Doc. 13 at 4). The Government explained that it interpreted the law at that time (June 12, 2017), including *Mathis*, *Sykes*, and *Phillips*, to be "that a Missouri conviction for second-degree burglary qualifies as a 'violent felony' . . . only if it is expressly charged as a burglary of a building (as opposed to an 'inhabitable structure')[.]" 16-cv-05064-DGK, Supp. Resp. at 5-6, and n.3 (Doc. 11). For the reasons explained above in Section II.A., the Government's concession and reliance on *Mathis* was misplaced. *See also* Endnote 1, *infra*.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court may issue a certificate of appealability only where a petitioner "has made a substantial showing of the denial of a constitutional right." This requires showing that "reasonable jurists" could find the Court's decision to be "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation marks and citations omitted). At least one other district judge in this circuit addressing identical prior convictions for Missouri second-degree burglary has concluded that the legal environment in 2005 established that the residual clause led the sentencing court to apply the ACCA enhancement. *Caldwell v. United States*, 2019 WL 670316 (E.D. Mo. Feb. 19, 2019). Therefore, the Court grants Movant a certificate of appealability.

## **<u>Conclusion</u>**

Accordingly, Darrell Walker's successive motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**, but Walker is **GRANTED** a certificate appealability.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 17, 2019

### Endnote 1

"[T]he relevant background legal environment is . . . a 'snapshot' of what the controlling law was at the time of sentencing and does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions. *Snyder*, 871 F.3d at 1129. However, the Court notes that since Walker's sentencing in August 2005, the legal environment as to whether Missouri second-degree burglary counts as ACCA burglary has been in flux. The Supreme Court's decision in *Mathis* impacted how the Eighth Circuit analyzed the Missouri second-degree statute, but for the reasons discussed below, this Court's analysis is in accord with *Mathis*. *Mathis* and its impact on ACCA jurisprudence is worthy of discussion.

In *Mathis*, the Supreme Court analyzed an Iowa burglary statute, which defined burglary as follows:

> Any person, having the intent to commit felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Iowa Code § 713.1 (1989); *United States v. Mathis*, 786 F.3d 1068, 1073 (8th Cir. 2015), *rev'd*, 136 S. Ct. 2243 (2016). The statute defines "occupied structure" to include:

> [A]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an 'occupied structure' whether or not a person is actually present.

Iowa Code § 702.12; *Mathis*, 786 F.3d at 1074, *rev'd*, 136 S. Ct. 2243 (2016). The chart below shows a side-by-side comparison of the elements of Iowa burglary, which are paraphrased, and the elements of generic burglary:

| Elements of Iowa second-degree burglary | Elements of generic burglary |
| --- | --- |
| an entry or remaining in without license or privilege, or breaking | an unlawful or unprivileged entry into, or remaining in |
| an occupied structure | a building or other structure |
| with the intent to commit a felony, assault or theft therein | with intent to commit a crime |

*Mathis* held, based on the parties' agreement, that the statutory term "occupied structure" covers a broader range of places than "a building or structure" in generic burglary. 136 S. Ct. at 2250. The *Mathis* Court then held that no conviction under the Iowa statute could count as ACCA burglary because the listed locations are not alternative elements, but alternative means of satisfying the locational element of the offense. *Id.* at 2251-56. The Eighth Circuit relied on *Mathis* in changing its course on how to analyze the Missouri second-degree statute. Before *Mathis*, the Eighth Circuit held that Missouri second-degree burglary is generic burglary under the categorical approach. *See United States v. Olsson*, 742 F.3d 855, 856 (8th Cir. 2014) (Missouri second-degree burglary is generic burglary under the categorical approach); *see also United States v. Cantrell*, 530 F.3d 684, 695 (8th Cir. 2008) (acknowledging in dicta that Missouri second-degree burglary "appears" to be generic burglary). However, after *Mathis*, the Eighth Circuit found that Missouri second-degree burglary is broader than generic burglary based on the Missouri statute's similarities to the Iowa statute in *Mathis*. *See United States v. Naylor*, 887 F.3d 397, 399, 405 (8th Cir. 2018) (en banc) (Missouri second-degree burglary statute is broader than generic burglary based on *Mathis*) (Missouri second-degree burglary statute is indivisible); *United States v. Phillips*, 853 F.3d 432, 435-36 (8th Cir. 2017) (applying modified categorical approach, Missouri second-degree burglary statute is divisible because the phrase "a building or inhabitable structure" lists two alternative elements), *abrogated by Naylor*, 887 F.3d at 399, 405; *United States v. Bess*, 655 Fed. App'x 58 (2016) (based on *Mathis*, Missouri second-degree burglary is not generic burglary because inhabitable structure covers a broader range of conduct than generic burglary); and *United States v. Sykes*, 844 F.3d 712, 715 (8th Cir. 2016) (same as *Phillips*), *overruled by Naylor*, 887 F.3d at 399, 405.

In 2018, the Supreme Court added another significant case to ACCA jurisprudence. In, *Stitt* the Supreme Court held that a burglary statute's coverage of a broad class of vehicles and structures restricted to those vehicles and structures designed or adapted for overnight use does not take the statute outside of burglary for purposes of the enumerated offenses clause. 139 S. Ct. 399, 407 (2018). The *Stitt* Court confirms that a burglary statute's inclusion of vehicles and structures other than buildings does not necessarily make the statute broader than generic burglary. *See id.* at 406. Rather, language in the statute modifying the class of vehicles and structures must be considered. *See id. Stitt* highlights that ACCA burglary does cover a class of vehicles and

structures restricted in a way to focus on circumstances where burglary is likely to present a serious risk of violence. *Id.* at 407.

In its rationale, *Stitt* distinguishes the Tennessee and Arkansas burglary statutes at issue in the consolidated cases before it from burglary statutes which the Supreme Court had previously found did not count as burglary under the enumerated offenses clause. 139 S. Ct. at 407. First, *Stitt* distinguished an earlier Missouri statute referenced in *Taylor*. The earlier Missouri statute covered "*any* boat or vessel, or railroad car." *Id.* (emphasis in original); *Taylor*, 495 U.S. 575, 599 (1990). *Stitt* explained that the earlier Missouri statute in *Taylor* "referred to ordinary boats and vessels often at sea (and railroad cars often filled with cargo, not people), nowhere restricting its coverage, as here, to vehicles or structures customarily used or adapted for overnight accommodation. The statutes before us, by using these latter words, more clearly focus upon circumstances where burglary is likely to present a serious risk of violence." *Id.* Next, *Stitt* distinguished the Iowa statute analyzed in *Mathis*. *Stitt* explained that courts had "construed [Iowa's burglary] statute to cover ordinary vehicles because they can be used for storage or safekeeping . . . [which] is presumably why, as we write in our opinion, 'all parties agree[d]' that Iowa's burglary statute covers more conduct than generic burglary does." *Id.* (cleaned up). Distinguishing *Mathis*, the *Stitt* Court said "what matters is that the Court in *Mathis* did not decide the question now before us—that is, whether coverage of vehicles designed or adapted for overnight use takes the statute outside the generic burglary definition." *Id.*

In distinguishing both *Taylor* and *Mathis*, *Stitt* clarifies the analysis in determining whether a burglary conviction counts as burglary under the enumerated offenses clause. On the one hand, where a burglary statute covers vehicles and structures, the statute fits within generic burglary by using language restricting the class of vehicles to focus on circumstances where burglary is likely to present a serious risk of violence (Arkansas and Tennessee burglary statutes addressed in *Stitt* as well as the Missouri second-degree burglary statute at issue in Walker's case). On the other hand, where a burglary statute covers vehicles and structures, the statute falls outside the scope of generic burglary if it either (i) has no modifying language (earlier Missouri burglary statute addressed in *Taylor*), or (ii) even though it does have modifying language, the modifying language does not sufficiently restrict the statute's coverage to circumstances with inherent potential harm to persons (Iowa burglary statute addressed in *Mathis*). Although *Stitt* was decided well-after

Walker's sentence in 2005, the Supreme Court did not announce anything new; it simply reiterated the same existing legal principles under *Taylor* that it has been saying for almost three decades.

## Appendix

Ala. Code §§ 13A-7-7, 13A-7-1(2) (1975) (amended 1977) (involving a "building" which is defined as "[a]ny structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein); Alaska Stat. §§ 11.46.300, 11.46.310, 11.81.900(b)(3) (1989) (effective 1978) (involving a "building" which, "in addition to its usual meaning, includes any propelled vehicle or structure adapted for overnight accommodation of persons or for carrying on business."); Ariz. Rev. Stat. Ann. §§ 13-1501(12), 13-1508 (1978) (involving a "structure" which is defined as including "any building, object, vehicle, railroad car or place with sides and a floor, separately securable from any other structure attached to it and used for lodging, business, transportation, recreation or storage."); Colo. Rev. Stat §§ 18-4-101(1)-(2), 18-4-202, 18-4-203 (1978) (involving a "building" which is defined as "a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property, and includes a ship, trailer, sleeping car, airplane, or other vehicle or place adapted for overnight accommodations of person or animals, or for a carrying on of business therein."); Conn. Gen. Stat. Ann. §§ 53a-100(a), 53a-101, 53a-103 (1985 Cum. Supp.) (involving a "building" which "in addition to its ordinary meaning, includes any watercraft, aircraft, trailer, sleeping car, railroad car, or other structure or vehicle or any building with a valid certificate of occupancy."); Ga. Code Ann. § 16-7-1(a) (1984) (involving "any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another[.]"); Ind. Code Ann. § 35-43-2-1 (Supp. 1981) (classifying the level of burglary when "the building or structure is a dwelling"); Iowa Code §§ 702.12, 713.1 (1985) (involving an "occupied structure" which includes "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. . . . However, . . . [an] object or device which is adapted or used for the deposit or storage of anything of value but which is too small or not designed to allow a person to physically enter or occupy it is not an 'occupied structure.'"); La. Rev. Stat. Ann. § 14:62.2 (1978) (involving "Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein[.]"); Me. Rev. Stat. Ann. Tit. 17-A §§ 2(10), 2(24), 401 (1983) (involving "dwelling place" which "means a structure which is adapted for overnight accommodation of persons, or sections of any structure similarly adapted. A dwelling place does not include garages or other structures, whether adjacent or attached to the dwelling place, which are used solely for the storage of property or structures formerly used as dwelling places which are uninhabitable. It is immaterial whether a person is actually present."); Minn. Stat. § 621.01, subd. 4 (1961) (involving a "building" which is defined as "any house, vessel, railway car, tent, shop, or other structure suitable for affording shelter for human beings, or appurtenant to or connected with a structure so adapted."); Mont. Code. Ann. §§ 45-2-101(40), 45-2-204 (1983) (involving an "occupied structure" which means any building, vehicle, or other place suitable for human occupancy or night lodging of persons or for carrying on business, whether or not a person is actually present."); N. H. Rev. Stat. Ann. § 635:1 (1974) (involving an "occupied structure" which

includes any "structure, vehicle, boat or place adapted for overnight accommodation of persons, or for carrying on business therein[.]"); N.J. Stat. Ann. §§ 2C:18-1, 2C:18-2 (West 1982) (involving a "structure" which includes any "building, room, ship, vessel, car, vehicle, or airplane, and also means any place adapted for overnight accommodation of persons, or for carrying on business therein."); N.Y. Penal Law § 140.00(2) (McKinney 1979) (involving a "building" which "in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer."); N.C. Gen. Stat. § 14-54(c) (1981) ("building shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property."); N.D. Cent. Code §§ 12.1-22-02, 12.1-22-06(4) (1973) ("occupied structure means a structure or vehicle: a. Where any person lives or carries on business or other calling; or b. Which is used for overnight accommodation of person. c. Any such structure or vehicle is deemed to be 'occupied' regardless of whether a person is actually present."); Ohio Rev. Code Ann. §§ 2909.01, 2911.11, 2911.12, (Lexis 1982) (involving an "occupied structure" which includes any "house, building, outbuilding, watercraft, aircraft, railroad, car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies... (D) in which at the time any person is present or likely to be present") (explaining that (D) "includes the otherwise deserted warehouse in which a watchmen is on the scene, and also includes the retail store which is open for business but which is momentarily empty."); Okla. Stat. tit. 21 §§ 1431, 1435, 1439 (1971) (involving a "dwelling house" which "includes every house or edifice, any part of which has usually been occupied by any person lodging therein at night[.]") (defining "dwelling" as including "every house, trailer, vessel, apartment or other premises, any part of which has usually been occupied by a person lodging therein at night and any structure joined to and immediately connected with such house, trailer or apartment."); Ore. Rev. Stat. §§ 164.205, 164.215, 164.225 (1985) (involving a "building" which, "in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein."); 18 Pa. Stat. And Cons. Stat. Ann. §§ 3501, 3502 (West 1973) (involving an "occupied structure" which includes any "structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein."); S.C. Code Ann. § 16-11-10 (1976) (involving a "dwelling house" defined as "any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property[.]"); S.D. Codified Laws §§ 22-1-2(49), 22-32-1, 22-32-3, 22-32-8 (1988) (effective 1976) (involving an "occupied structure") (defining structure as "any house, building, outbuilding, motor vehicle, watercraft, aircraft, railroad car, truck, trailer, tent, or other edifice, vehicle or shelter, or any portion thereof.");Tex. Penal Code Ann. §§ 30.01, 30.02 (West 1989) (effective 1974) (involving a "building" which includes any "enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use."); Utah Code Ann. §§ 76-6-201(1), 76-6-202 (1977) (involving a "building" which includes, "in addition to its ordinary meaning, means any water-craft, aircraft, trailer, sleeping car, or other structure or vehicle adapted for overnight accommodation of person or for carrying on business therein."); and Wash. Rev. Code §§ 9A.04.110(5), 9A.52.030(1) (1975) (involving a "building" which includes "any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods; each unit of a building consisting of two or more units

20

separately secured or occupied is a separate building."); W. Va. Code Ann. § 61-3-11 (Lexis 1984) (involving a "dwelling house" which includes "a mobile home, house trailer, modular home or self-propelled motor home, used as a dwelling regularly or only from time to time, or any other nonmotive vehicle primarily designed for human habitation and occupancy.").